IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS MERCADO HERNÁNDEZ,

    Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

CIVIL NO. 11-1899 (MEL)

**OPINION AND ORDER**

**I.    PROCEDURAL BACKGROUND**

Carlos Mercado Hernández ("plaintiff" or "claimant") was born in 1957, has completed high school, and was employed as a janitor until March 15, 2005. (Tr. 67.) On December 7, 2005, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability due to a major depressive disorder, disc protrusion at L4-5, disc bulge at L5-S1, and diabetes mellitus. (Tr. 122.) The alleged onset date of the disability was March 15, 2005; the end of the insurance period was December 31, 2010. (Tr. 18.) Plaintiff's application was denied initially as well as on reconsideration. (Tr. 30-35, 37-40.) After plaintiff's timely request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on June 18, 2009. (Tr. 41-42, 294-307.) Plaintiff waived his right to appear. (Tr. 663-65.) On June 30, 2009, the ALJ rendered a decision denying plaintiff's claim. (Tr. 10-25.) The Appeals Council denied plaintiff's request for review on July 13, 2011; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). (Tr. 5-7.)

On September 13, 2011, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), alleging that the ALJ ignored substantial evidence and did not use the correct legal standards in framing the hypothetical given to the vocational expert. Docket No. 1, at 1. On February 21, 2012, defendant filed an answer to the complaint and a certified transcript of the administrative record (D.E. 5; 6). Both parties have filed supporting memoranda (D.E. 8; 16).

## II.   LEGAL STANDARD

### A.   Standard of Review

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence."

Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B. **Disability Under the Social Security Act**

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987). An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt.

Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42.  If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.  At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).  Once he has carried

---

[1] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

### III.   THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

#### A.   Physical Evidence

On a referral from Dr. Scott Stoll, a treating physician, plaintiff had a magnetic resonance imaging (MRI) study on March 16, 2005. (Tr. 154.) It showed degenerative disc disease between L4 and S1, central disc protrusion and mild to moderate central spinal stenosis at L4-L5, and a mild broad based disc bulge at L5-S1. Id. On March 18, 2005, Dr. Stoll diagnosed lower back pain and bulges at L4-L5 and L5-S1. (Tr. 153.)

On February 23, 2006, plaintiff was evaluated by Dr. Samuel Méndez, a consulting neurologist. He reported that plaintiff complained of lower back pain since 2000 and had quit working in 2005 after physical therapy and medications did not provide relief. The examination revealed plaintiff had limited muscle strength in the psoas (4/5) and some range of motion restriction in the knees, hips, and lumbar spine. (Tr. 172-73, 176-78, 179-80.) Otherwise, he had a 5/5 motor strength, adequate muscle bulk, negative straight leg raising, and normal reflexes and sensory functions. Id. The radiological examinations of the lumbar spine revealed minimal loss of the normal spine curvature suggesting muscular spasm, otherwise unremarkable examination. (Tr. 175.)

On April 20, 2006, Dr. María Guzmán treated plaintiff for back pain. The physical examination showed normal findings. (Tr. 194.) The next day, Dr. Guzmán reviewed the results of the laboratory workup and ran neurological and extremity examinations, all of which showed normal findings. Dr. Guzmán diagnosed diabetes mellitus, lumbalgia, and an unspecified mental condition. (Tr. 189-92.)

On June 9, 2006, Dr. Osvaldo Rivera, a state agency physician, reviewed the medical evidence and completed a Physical Residual Functional Capacity Assessment. Dr. Rivera indicated that plaintiff could occasionally lift and carry twenty pounds and frequently handle ten pounds. (Tr. 199.) He also noted plaintiff could stand, walk, and sit for about six hours in an eight-hour workday and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 200.) Dr. Rivera's findings were later confirmed by Dr. Ramón Ruiz, a second consulting physician who also reviewed the evidence in the record. (Tr. 269-70.)

On August 17, 2006, Dr. Madeline Asencio, a treating physician, diagnosed degenerative disc disease at L4-S1, and central disc protrusion with mild stenosis at L4-L5. (Tr. 228). Dr. Asencio determined that plaintiff could sit and stand or walk less than two hours in an eight-hour day, would need to alternate between sitting and walking, would require unscheduled breaks all the time, and would need to use a cane or other assistive device. (Tr. 230-31.) Plaintiff could occasionally crouch, squat or climb stairs, but rarely lift less than ten pounds and never twist, stoop or climb ladders. (Tr. 231.) She further assessed that plaintiff could reach with his arms and handle objects for less than ten minutes, and use his fingers for fine manipulations for up to thirty minutes. (Tr. 231.) Based on these determinations, Dr. Asencio opined that plaintiff had been unable to work for the past four years. Id. On January 28, 2007, Dr. Asencio completed a questionnaire describing plaintiff's impairments. (Tr. 228-32.)

At the request of the Commissioner, Dr. Antonio Aponte García performed an internal medicine examination on December 4, 2007. (Tr. 233-43.) Plaintiff complained of chronic lower back pain lasting three years and described that heavy lifting and prolonged sitting or walking caused persistent pain. (Tr. 233-34.) He was taking Glipizide, Lexapro, Lunesta, Seroquel, Celebrex, and Flexeril at the time. His diabetes was under control. Id. On physical

examination, Dr. Aponte García noted that plaintiff had mild tenderness and slight range of motion restriction of the lumbar spine, but no motor or sensory deficit, full lower extremity strength, and no limitations in hand function. (Tr. 235, 237-41.) Dr. Aponte García diagnosed type II diabetes mellitus, depressive disorder, chronic lower back pain, discogenic disease at L5-S1, and thoracolumbar spondylosis. (Tr. 235.)

### B. Psychiatric Evidence

Dr. José J. Zamora Álvarez, who was plaintiff's treating psychiatrist since April 14, 2005, diagnosed recurring major depression with anxiety and polysubstance dependence in long-term remission. (Tr. 170.) On October 16 and 19, 2005, Dr. Zamora completed a psychiatric medical report and mental impairment form. (Tr. 155-70.) He noted plaintiff was anxious, sad, and irritable. (Tr. 166.) His current complaints included crying bouts, agoraphobia, insomnia, poor impulse control, problems with attention, memory, and concentration, and feelings of sadness, anxiety, apprehension, and worthlessness. (Tr. 155, 166-67.) He denied having any suicidal thoughts or ideas and had no hallucinations or deliria. (Tr. 168.) Plaintiff's treatment consisted of support therapy and medication including Lexapro and Seroquel. (Tr. 170.) Dr. Zamora assessed plaintiff's Global Assessment of Functioning (GAF) at 41-50,[2] concluded that plaintiff's prognosis was poor, and determined that he was unable to handle funds. Id.

On March 23, 2006, Dr. Alberto Rodríguez-Robles, a consulting psychiatrist, evaluated plaintiff and diagnosed recurrent, severe major depressive disorder without psychotic features.

---

[2] GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) [hereinafter DSM–IV], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004). It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM–IV at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059 at *4 n.7 (D.R.I. Mar. 31, 2008). "A GAF score of 41-50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" Colón v. Barnhart, 424 F. Supp. 2d 805, 809 n.3 (E.D. Pa. 2006) (quoting DSM–IV, at 34).

(Tr. 188.)  Dr. Rodriguez noted plaintiff was fully oriented, had adequate memory, and average insight and judgment.  (Tr. 187.)  However, his attention and concentration were diminished, his affect was constricted, and he had a depressed mood and psychomotor retardation.  Id. Dr. Rodríguez concluded his prognosis was poor and he lacked the capacity to handle funds. (Tr. 188.)

At the request of the Commissioner, on June 16, 2006, Jeannette Maldonado, Psy.D., reviewed the medical evidence and completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique form. (Tr. 206-24.)  She indicated that plaintiff had moderate restriction in activities of daily living and could not perform complex tasks. (Tr. 209, 221.)  However, plaintiff could complete simple tasks, sustain concentration for two-hour periods, tolerate routine supervision, make work-related decisions, and interact with peers. (Tr. 209.)

In 2007, Dr. Zamora submitted a Psychiatric Medical Report dated November 20, 2007, confirming his previous findings in 2005.  He also completed a Mental Residual Functional Capacity Assessment in which he indicated plaintiff was seriously limited, but not precluded from, interacting appropriately with the general public and had an extreme restriction of daily living activities, as well as extreme deficiencies in concentration and maintaining social functioning. (Tr. 244-48.)

On January 16, 2008, Dr. Armando I. Caro, a consulting psychiatrist, performed an evaluation and diagnosed depressive disorder and a moderate pain disorder associated to primary medical condition.  He calculated a GAF of 60.[3]  (Tr. 272.)  He noted plaintiff had an irritable

---

[3] A GAF between 51 and 60 "indicates the individual has '[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning ….'" Pate-Fires v. Astrue, 564 F.3d 935, 938 (8th Cir. 2009) (quoting DSM–IV, at 32)."A GAF of 61 to 70 reflects mild symptoms such as depressed mood, or some difficulty in social,

affect, impaired concentration and short-term memory. Id. Dr. Caro assessed a poor prognosis and reduced capacity for social interaction, but concluded that claimant was able to handle funds. (Tr. 272.)

Also at the request of the Commissioner, Dr. Luis Umpierre reviewed the medical evidence and affirmed it documented only a moderate condition. (Tr. 283-84.) On November 18, 2008 plaintiff submitted treatment notes from Dr. Ana Lozada De Suárez in which she diagnosed schizoaffective disorder and recommended maintaining the same medications, since he had responded well and reported no undesirable side effects. (Tr. 290.)

## IV.  LEGAL ANALYSIS

### A.  Failure to Give Controlling Weight to Plaintiff's Treating Sources

Plaintiff argues that the ALJ erred in disregarding the treating psychiatrist's and treating physician's (Dr. Zamora and Dr. Asencio, respectively) medical findings and did not provide adequate reasons for doing so. Docket No. 16, at 30. In a Social Security disability case, an ALJ should generally give more weight to a treating physician's opinions, because such doctors "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2).  An ALJ, however, may disregard them with a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record." Carrasco v. Comm'r of Soc. Sec., 528 F.Supp.2d 17, 25 (D.P.R. 2007). An ALJ should "'always give good reasons' for the weight [he] gives a treating source opinion." Soto-Cedeño v. Astrue, 380 F. App'x 1, 3 (1st Cir. 2010) (quoting 20 C.F.R. § 404.1527(c)(2)).

---

occupational, or school functioning." Lisi v. Astrue, Civ. No. 11-30163 (DPW), 2012 WL 1853589, at *5 (D. Mass. May 18, 2012) (citing DSM–IV, at 32).

In this case, however, the ALJ extensively explained his reasons for disregarding or giving less probative value to the treating physicians' findings. The ALJ first pointed out the absence of progress notes from Dr. Zamora's treatment. (Tr. 19.) Dr. Zamora only provided two psychiatric medical reports, a checklist of signs and symptoms with spaces for diagnosis, description of treatment and prognosis, and spaces to mark mental ability to perform work-related activities dated October 16, 2005, and a mental residual functional capacity assessment form from December 5, 2007. (Tr. 19-20; see Tr. 155-70, 244-68.) The lack of progress notes "deprived the [ALJ] from analyzing the pattern of said treatment and its effect on the claimant's daily living and capacity to perform work-related activities at different treatment interviews." (Tr. 20.) Therefore, the analysis was limited to Dr. Zamora's reports, the consultative examinations and the analysis from the Disability Determination Program's psychologists. Id.

The ALJ next examined Dr. Zamora's psychiatric reports. Dr. Zamora determined that plaintiff had recurring major depression with anxiety and polysubstance dependence in total remission, with a GAF between 41 and 50. (Tr. 268; see also Tr. 20). However, Dr. Zamora did not provide an explanation for the basis of this conclusion, nor did he indicate the findings on which he based his GAF. Upon further examination, the ALJ noted that the text of the report dated October 19, 2005, is exactly the same as the November 15, 2007 report and that the information in the checklists suggested the reports were "ad verbatim copies of each other." Id.; (compare Tr. 264-68 with Tr. 259-63.) Furthermore, the claimant's signs and symptoms remained the same over the entire period of time encompassing the four psychiatric medical documents (two years), thus leading to the conclusion that the reports do not demonstrate a process of independent analysis regarding the claimant's status. (Tr. 20.) When comparing

Dr. Zamora's assessment with the consultant psychiatrists' reports,[4] the ALJ noted the latter reports indicated that claimant was coherent, logical, and well-oriented. (Tr. 20, 187-88, 272.) Although Dr. Caro and Dr. Rodríguez determined that plaintiff's concentration was impaired or diminished, plaintiff was able to complete at least one of the concentration-related tests. (Tr. 187, 272.) Moreover, the ALJ noted that said consulting psychiatrists did not conclude that plaintiff's concentration was "significantly impaired." (Tr. 20.) Plaintiff had fair or adequate judgment, adequate memory, and no suicidal ideas or delusions. (Tr. 20, 187-88, 272.) Accordingly, the ALJ's determinations regarding Dr. Zamora's findings are sufficiently supported by the medical record.

The ALJ noted that Dr. Asencio described that plaintiff was limited in sitting or standing for long periods of time. (Tr. 19, 232.) Dr. Asencio also stated that plaintiff was incapable of standing or walking for more than two hours, handling objects for more than ten minutes, and using his fingers for fine manipulation for more than thirty minutes in a workday. (Tr. 230-31.) He could rarely lift less than ten pounds and never twist, stoop or climb stairs. (Tr. 231.) Based on these determinations, Dr. Asencio concluded that plaintiff was limited to an extremely narrow range of sedentary work and had been disabled since 2003. (Tr. 19, 231.)

A finding provided by the claimant's treating physician that the claimant is "disabled" does not mean that the Commissioner will determine that the claimant is "disabled" under the meaning provided by the Social Security Act. 20 C.F.R. § 404.1527. This determination is exclusively reserved for the Commissioner. Id. The weight given to a physician's statement depends on the extent to which it is supported by specific and complete clinical findings, and is

---

[4] Claimant underwent consultative psychiatric evaluations by Dr. Alberto Rodríguez-Robles and Dr. Armando I. Caro on March 13, 2006, and January 16, 2008, respectively. (Tr. 19.)

consistent with other evidence as to the severity and probable duration of the impairment. 20 C.F.R. § 404.1526.

The ALJ first pointed out that Dr. Asencio's reported clinical signs and laboratory findings failed to reveal significant pathology. (Tr. 19.) The ALJ also noted that Dr. Asencio did not provide any progress notes from plaintiff's treatment. Id. Although Dr. Asencio's diagnosis regarding claimant's disc protrusion, mild central stenosis at the L4-L5 level, and mild disc bulge at the L5-S1 level is compatible with the findings from the remaining treating and consultative sources,[5] (Tr. 228), the latter failed to reveal persistent lumbar tenderness, spinal deviations or significant limitations in the range of motion of the lumbosacral spine, (Tr. 19). The physical examinations did not show significant or persistent sensory deficits, muscular weakness, motor atrophy, or reflex abnormalities. (Tr. 19, 154.) Claimant's motor strength was excellent, ranging at a level of 5/5, except for the psoas, which ranged at a 4/5 level. (Tr. 172.) For said reasons, the ALJ determined that Dr. Asencio's conclusion of disability was unsupported, since it was inconsistent with the findings from other treating and consultative sources.

Considering the nature and frequency of the prescribed treatment, upon examining Dr. Asencio's report, the ALJ found it demonstrates that plaintiff has the physical residual functional capacity to perform light work activity, contrary to Dr. Asencio's indication that claimant was restricted to an extremely narrow range of sedentary work.[6] (Tr. 19.) Said conclusion is consistent with the state agency internist's residual functional capacity assessment.

---

[5] This includes (1) Dr. Stoll's medical records (Tr. 153-54.); (2) Dr. Méndez's neurological consultative examination (Tr. 171-80.); (3) Dr. María Guzman's progress notes (Tr. 189-94.); (4) Dr. Caro's psychiatric evaluation (Tr. 271-77.)

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job involving light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. In contrast, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

(Tr. 199.) In sum, there is substantial evidence in the record supporting the ALJ's determination to not give controlling weight to Dr. Zamora's and Dr. Asencio's opinions.

### B. Failure to Apply the Correct Legal Standards in Framing the Hypothetical posed to the Vocational Expert

Plaintiff next argues the hypothetical posed to the Vocational Expert did not accurately reflect all his limitations. Docket No. 16, at 2. Plaintiff claims the hypothetical did not include plaintiff's mental impairments as described by his treating psychiatrist, Dr. Zamora, or the physical limitations assessed by Dr. Asencio. Id at 15-16.

A vocational expert's opinion stating that a Social Security claimant can perform certain jobs qualifies as substantial evidence at the fifth step of the analysis. Espada–Rosado v. Comm'r of Soc. Sec., 25 Fed.Appx. 5, 6 (1st Cir. 2001) (per curiam). In order to be considered substantial evidence, the opinion of the vocational expert must be in response to a hypothetical that accurately describes the claimant's limitations. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). A proper hypothetical question is one that reasonably incorporates the disabilities recognized by the ALJ. Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (per curiam).

During the administrative hearing, the ALJ presented the following hypotheticals to the vocational expert:

> [C]onsider a person with the same work experience, age and academic vocational profile as that of the claimant's, also a person whose maximum physical exertion capacity is *light*, whose maximum mental exertion is to perform simple and repetitive tasks, who is not able to have any contact with the public and who may have as maximum the occasional contact with coworkers and supervisors.
> …
> [C]onsider a person with the same work experience, age, and vocational academic profile as that of the claimant's; in addition, a person whose physical exertion capacity is *sedentary*, whose maximum mental capacity is simple, repetitive tasks and who may not have any contact with the public and who may have a maximum of occasional interaction with coworkers and supervisors.

13

(Tr. 298-300 (emphasis added).) Based on these hypotheticals, the vocational expert opined that plaintiff could not perform his past work but was able to perform jobs related to finishing line assembly such as packing, assembling, and inspection. (Tr. 300.) In terms of the physical demand, the vocational expert pointed out that there is flexibility for both job markets, light and sedentary. Id.[7]

It is well within the ALJ's authority to weigh the evidence, determine the credibility of plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert. Arocho, 670 F.2d at 375. Here, the ALJ concluded that the medical evidence did support plaintiff's allegation in terms of the medical impairments and the symptoms alleged. (Tr. 23.) However, the ALJ did not find medical evidence suggesting the disabling frequency and intensity claimed by plaintiff. Id. The nature of claimant's medical treatment, his response to said treatment, the lack of adverse side effects, and the absence of persistently disabling musculoskeletal, endocrinological and mental pathology contradict plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms. Id. Considering that the opinions offered by plaintiff's treating physicians, Dr. Zamora and Dr. Asencio, were not supported by their own medical findings, nor by the rest of the evidence on the record,[8] the ALJ gave them less probative value.[9] Accordingly, the hypothetical presented

---

[7] When cross-examined by plaintiff's counsel, the vocational expert clarified that his opinion regarding the availability of jobs on the sedentary level falls prior to January 2007, when plaintiff turned 50 years of age. (Tr. 301-02.) However, this issue has not been brought to the attention of the Court, therefore no expression is necessary.

[8] Among other findings, see for example: (1) Dr. Stoll's diagnosis of mild to moderate central spinal stenosis (Tr. 153-54.); (2) Dr. Méndez's finding of minimal loss of the normal spine curvature and otherwise unremarkable examination (Tr. 171-80.); (3) Dr. Guzman's review of the laboratory reports and neurological examination, both revealing normal findings (Tr. 189-94.); (4) Dr. Rivera's indication that plaintiff could stand, walk, and sit for about six hours in an eight-hour workday and occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 200.); (5) Dr. Ruiz's confirmation of Dr. Rivera's findings (Tr. 269-70.); (6) Dr. Aponte's physical examination revealing plaintiff had mild tenderness and slight range of motion restriction on the lumbar spine, but had full lower extremity strength and showed no motor or sensory deficit, or limitations in hand function (Tr. 235, 37-41.); (7)

to the vocational expert addressed those circumstances which the ALJ found credible and were supported by medical evidence. Id.

## V.     CONCLUSION

Based on the foregoing analysis, the Court concludes that the Commissioner's decision was based on substantial evidence. Therefore, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2013.

s/Marcos E. López
U.S. Magistrate Judge

---

Dr. Rodríguez's indication that plaintiff was fully oriented, had adequate memory, and average insight and judgment (Tr. 187.); (8) Dr. Maldonado's findings, which revealed that claimant had a moderate restriction in performing activities of daily living, but could complete simple tasks, sustain concentration for two-hour periods, tolerate routine supervision, make work-related decisions, and interact with peers (Tr. 209.); (9) Dr. Zamora's indication that plaintiff was not precluded from adequately interacting with the public (Tr. 244-48.); and (10) Dr. Caro's opinion that plaintiff had a moderate pain disorder (Tr. 272.).

[9] Dr. Asencio and Dr. Zamora concluded that the claimant's capacity to perform sustained work activity on a regular basis is markedly restricted as a result of his impairments. (Tr. 23.)